**THE AFTERGOOD LAW FIRM**
Aaron D. Aftergood (239853)
aaron@aftergoodesq.com
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 551-5221
Facsimile: (310) 496-2840

**PELUSO LAW, LLC**
Patrick H. Peluso*
ppeluso@pelusolawfirm.com
865 Albion Street, Suite 250
Denver, Colorado 80220
Telephone: (720) 805-2008
Facsimile: (720) 336-3663

**Pro Hac Vice* admission to be filed
Attorneys for Plaintiffs and the alleged Classes

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| **SARA TAYLOR, NICHOLAS FINLEY, and NICHOLAS DUNGEY,** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**QUOTELAB, LLC.** a Delaware limited liability company,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Sara Taylor, Nicholas Finley, and Nicholas Dungey bring this Class Action Complaint against Defendant QuoteLab, LLC ("Defendant" or "QuoteLab") to stop QuoteLab's practice of placing (or having placed on its behalf) telemarketing telephone calls using an artificial or pre-recorded voice to the cellular telephones of consumers nationwide without their prior express written consent as well as its practice of placing telemarketing calls without displaying the caller's name on the Caller ID, as required. Plaintiffs seek to obtain redress for all persons injured by

Defendant's conduct and seeks an award of statutory damages to themselves and the members of the alleged Class, plus injunctive relief, court costs, and reasonable attorneys' fees as set forth herein.

**PARTIES**

1. Plaintiff Taylor is a natural person over the age of eighteen (18) who resides in Lavonia, Georgia.

2. Plaintiff Finley is a natural person over the age of eighteen (18) who resides in Brick Township, New Jersey.

3. Plaintiff Dungey is a natural person over the age of eighteen (18) who resides in Miami, Florida.

4. Defendant QuoteLab is a limited liability company organized and existing under the laws of the State of Delaware. Defendant's primary place of business and corporate headquarters is located in Los Angeles, California.

**JURISDICTION & VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action raises a question of federal law under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, a federal statute.

6. This Court also has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, because the alleged Class consists of over 100 persons, there is minimal diversity, and the claims of the class members, when aggregated together, exceeds $5 million. Further, none of the exceptions to CAFA apply.

7. This Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant solicits significant business in this District, is headquartered in this District, has entered into business contracts in this District, and a substantial part of the events or omissions giving rise to the claim occurred in or emanated from this District.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District, solicits a significant amount of consumer business within this District, and because the wrongful conduct giving rise to this case occurred in and/or emanated from this District.

**COMMON ALLEGATIONS OF FACT**

9. QuoteLab is a marketer of insurance products.

10. Unfortunately for consumers, QuoteLab casts its marketing net too wide. That is, in an attempt to promote its business and to generate leads, QuoteLab (either directly or via third-parties acting on its behalf and for its benefit) conducted (and continues to conduct) a wide-scale telemarketing campaign that features the repeated making of unsolicited calls to consumers' cellphones which feature an artificial voice without any prior express consent to make these calls.

11. Defendant (or third parties acting on its behalf and for its benefit) place these calls to telephones using artificial voice technology without consumers' prior express consent, written or otherwise, in violation of the TCPA.

12. That is, at no time did Defendant obtain prior express consent from Plaintiffs and the alleged Class in writing to receive the calls at issue.

13. Defendant also fails to transmit its name on the Caller ID, as required.

14. As such, Defendant not only invaded the personal privacy of Plaintiffs and members of the alleged Class, it intentionally and repeatedly violated the TCPA in the process.

15. Defendant's calls were also placed to persons (like Plaitiffs) who placed their numbers on the National Do Not Call Registry for the specific purpose of avoiding the nuisance and invasion of privacy caused by Defendant's calls.

**FACTS SPECIFIC TO PLAINTIFF TAYLOR**

16. Plaintiff Taylor is the subscriber to and customary user of the personal cellular telephone number ending in 5873.

17. Plaintiff Taylor registered her phone number on the National Do Not Call Registry on or around August 29, 2024.

18. On approximately November 18, 2024, Taylor received two unsolicited telemarketing calls from the number 706-493-5740. The caller's identification was not transmitted via Caller ID.

19. After each of these two calls, a voicemail was left.

20. One voicemail, which started speaking before the voicemail box was ready to record, featured an artificial voice and said:

> To speak with a licensed professional regarding your health insurance quote. Or press two if you would like to be added to our do not call list. Alternatively, you can opt-out of future QuoteLab marketing by calling us back at 855-410-9439. Thank you and have a great day.

21. The second voicemail featured the same artificial voice and the same message as the one described in paragraph 19, but it repeated itself and provided the full message:

> Hi thank you for requesting a health insurance quote with georgiahealthplans.com today. Open enrollment has begun. Now is the time to change or get new health insurance coverage for 2025. Press 1 if you would like to speak with a licensed professional regarding your health insurance quote. Or press two if you would like to be added to our do not call list. Alternatively, you can opt-out of future QuoteLab marketing by calling us back at 855-410-9439. Thank you and have a great day.

22. Taylor knew that she was listening to an artificial voice because it did not speak naturally and her lived experiences her him to conclude that the voice was unmistakably an artificial, non-human voice. Taylor has retained a copy of both voicemails, which the Court can review upon request and confirm that the recording features an artificial voice.

23. The artificial voice solicited Taylor to purchase health insurance and specifically referenced the Defendant, QuoteLab, as the caller.

24. Taylor did not request a quote or consent to receive QuoteLab's calls.

25. Taylor also received two calls from the same 706-493-5740 number on October 25, 2024. No voicemails were left after those calls.

## FACTS SPECIFIC TO PLAINTIFF FINLEY

26. Plaintiff Finley is the subscriber to and customary user of the personal cellular telephone number ending in 2230.

27. Plaintiff Finley registered his phone number on the National Do Not Call Registry on or around July 8, 2023.

28. On approximately November 27, 2024, Finley received three unsolicited telemarketing calls from the number 732-426-5499. The caller's ID was not transmitted via Caller ID.

29. As with Plaintiff Taylor, after each of these calls a voicemail was left.

30. The calls to Finley featured the same artificial voice and repeated the same message that was left for Taylor.

31. The first recording for Finley began further into the message than it did with Taylor. The voicemail, which started speaking before the voicemail box was ready to record, featured an artificial voice and said:

> Or press two if you would like to be added to our do not call list. Alternatively, you can opt-out of future QuoteLab marketing by calling us back at 855-410-9439. Thank you and have a great day.

32. The second voicemail featured the same artificial voice and the same message as the one described in paragraph 31.

33. As with Taylor, Finley knew that he was listening to an artificial voice because it did not speak naturally and his lived experiences led him to conclude that

the voice was unmistakably an artificial, non-human voice. Finley has retained a copy of the artificial voice voicemails, which the Court can review upon request and confirm that the recording features an artificial voice.

34. Finley also received a third voicemail, which featured a live person (not an artificial voice like the previous two). This person said:

> Hi, this message is for Ryan. My name is James from CBA. I just saw that you were on our website trying to get ACA coverage, so I was returning your call just to go over your options. If you get a chance 214-396-9358, again my number is 214-396-9358 and I look forward to your call. Thank you, bye.

35. Finley is not named Ryan and he did not go on any website to "try to get ACA coverage". Simply put, he did not consent to these calls.

## FACTS SPECIFIC TO PLAINTIFF DUNGEY

36. Plainiff Dungey is the subscriber to and customary user of the personal cellular telephone number ending in 0417.

37. Plaintiff Dungey registered his phone number on the National Do Not Call Registry on or around February 21, 2025.

38. On approximately March 24, 2025, Dungey received two unsolicited telemarketing calls from the number 561-944-5776. The caller's identification was not transmitted via Caller ID.

39. A voicemail featuring an artificial voice was left after each call. On the first call, the artificial voice stated:

> to be added to our do not call list. Alternatively, you can opt-out of future QuoteLab marketing by calling us back at 855-410-9439. Thank you and have a great day.

40. The second voicemail featured the same artificial voice and the same message as the one described in paragraph 39, but it repeated itself multiple times. The voicemail said:

> to be added to our do not call list. Alternatively, you can opt-out of future QuoteLab marketing by calling us back at 855-410-9439. Thank you and have a great day. Hi, thank you for requesting a health insurance quote with obamacareplans.com today. We're here to help you find the best plan available that fits your needs. Press 1 if you would like to speak with a licensed professional regarding your health insurance quote. Or press two if you would like to be added to our do not call list. Alternatively, you can opt-out of future QuoteLab marketing by calling us back at 855-410-9439. Thank you and have a great day. Hi, thank you for requesting a health insurance quote with obamacareplans.com today. We're here to help you find the best plan available that fits your needs. Press 1 if you would like to speak with a licensed professional regarding your health insurance quote. Or press two if you would like to be added to our do not call list. Alternatively, you can opt-out of future QuoteLab marketing by calling us back at 855-410-9439. Thank you and have a great day. Hi, thank you for requesting a health insurance quote with obamacareplans.com today. We're here to help you find the best plan available that fits your needs. Press 1 if you would like to speak with a licensed professional regarding your health insurance quote. Or press two if you would like to be added to our do not call list. Alternatively, you can opt-out of future QuoteLab marketing by calling us back at 855-410-9439. Thank you and have a great day. Sorry you are having difficulties. Goodbye.

41. As with Taylor and Finley, Dungey knew that he was speaking to an artificial voice because it did not speak naturally and his lived experiences led him to conclude that the voice was unmistakably an artificial, non-human voice. Dungey also has retained a copy of both artificial voice voicemails, which the Court can review upon request and confirm that the recording features an artificial voice.

42. Dungey did not visit obamacareplans.com or request that QuoteLab provide him with a health insurance quote through any means and did not consent to the receipt of pre-recorded/artificial voice calls.

## CLASS ACTION ALLEGATIONS

43. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and the Classes defined as follows:

> **Pre-recorded No Consent Class:** All persons in the United States from four years prior to the filing of this action through the date notice is sent to the Class who (1) received a telemarketing call made by QuoteLab, (2) on the person's telephone, (3) featuring an artificial or pre-recorded voice, and (4) for whom QuoteLab claims prior express written consent was obtained in the same manner as QuoteLab claims prior express written consent was obtained to call the Plaintiffs.

> **Caller ID Class:** All persons in the United States from four years prior to the filing of this action through the date notice is sent to the Class who (1) received more than one telemarketing call made by QuoteLab or any of QuoteLab's sub-dealers, vendors, lead generators, or agents either promoting QuoteLab's goods or services or that could have resulted in the sale of a QuoteLab product, (2) on the person's residential telephone, (3) where the name of the telemarketer was not transmitted to the called party as caller identification information.

44. The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former officers

and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiffs anticipate the need to amend the class definitions following appropriate discovery regarding, *inter alia*, the size of the class and the manner by which Defendant claim any prior express consent was obtained to call Plaintiffs.

45. **Numerosity:** The exact number of members within the Class is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant or their telemarketers have placed artificial calls to thousands of consumers who fall into the defined pre-recorded no consent Class. Likewise, Defendant has placed thousands of telemarketing calls without transmitting the caller's identification where available. The exact number of members of the Classes can be identified through Defendant's records (and the records of third parties) and by reference to other objective criteria.

46. **Typicality:** Plaintiffs' claims are typical of the claims of other members of the Classes in that Plaintiffs and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct.

47. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions. Plaintiffs and their counsel have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

48. **Commonality and Predominance:** There are several questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions go to the very heart of the litigation and predominate over any questions that may affect

individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant and/or their agents made the calls with the use of artificial voice technology;

(c) Whether Defendant and/or their telemarketers systematically made calls to persons who did not previously provide Defendant with prior express written consent;

(d) Whether the calls were for telemarketing purposes;

(e) Whether Defendant transmitted the caller's identification where available; and

(f) Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

49. **Conduct Similar Towards All Class Members:** By committing the acts set forth in this pleading, Defendant has acted or refused to act on grounds substantially similar towards all members of the Classes so as to render final injunctive relief and corresponding declaratory relief appropriate so as to warrant certification under Rule 23(b)(2).

50. **Superiority & Manageability:** This case is also appropriate for class certification under Rule 23(b)(3) because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay

and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured. Also, there are no pending governmental actions against Defendant for the same conduct.

## FIRST CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.***

**(On behalf of Plaintiff and the Pre-Recorded No Consent Class)**

51. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

52. Defendant or its telemarketers made artificial voice calls to cellular and residential telephone numbers belonging to Plaintiffs and other members of the Pre-Recorded No Consent Class without first obtaining prior express written consent to receive such calls.

53. By making the artificial voice calls to Plaintiff and members of the No Consent Class without their prior express consent, Defendant violated 47 U.S.C. § 227(b)(1)(A) and § 227(b)(1)(B).

54. The calls were for telemarketing purposes and announced the commercial availability of Defendant's solar products and services.

55. Neither Plaintiffs nor any other member of the proposed Class provided prior express written consent to receive the artificial voice calls at issue.

56. As a result of Defendant's conduct, Plaintiff and the other members of the No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

57. In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the No Consent Class.

58. To the extent third parties placed the calls, Defendant knowingly received the benefits of such calls and ratified the calls.

59. Defendant and its telemarketers failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a clear and conspicuous disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or pre-recorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

60. By making unsolicited telephone calls to Plaintiffs and members of the Pre-Recorded No Consent Class's telephones without prior express consent, and by utilizing a pre-recorded or artificial voice, Defendant and its agents violated 47 U.S.C. § 227(b)(1)(A)(iii).

61. To the extent third parties placed the calls, Defendant knowingly received the benefits of such calls and ratified the calls.

62. As a result of Defendant's unlawful conduct, and/or the conduct of Defendant's agents on or for Defendant's behalf, Plaintiffs and the members of the Pre-Recorded No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under

Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

63. In the event it is determined that Defendant's conduct was willful and knowing, the Court should, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Pre-Recorded No Consent Class.

**SECOND CAUSE OF ACTION**

**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.***

**(On behalf of Plaintiff and the Caller ID Class)**

64. Plaintiffs incorporate each of the above-pleaded allegations, facts, and statements as if fully set forth herein.

65. The TCPA's implementing regulations provide in part that:

> Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) must transmit caller identification information.
>
> (1) For purposes of this paragraph, caller identification information must include either CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer.

47 C.F.R. § 64.1601(e).

66. Defendant failed to transmit the name of the telemarketer as part of the caller identification information when placing the telemarketing calls to Plaintiffs and the Caller ID Class.

67. This service (transmission of the name of the telemarketer) was, on information and belief, available to Defendant by its carrier.

68. By not transmitting the name of the telemarketer despite this service being available, QuoteLab has violated the TCPA for each call placed by it or on its

behalf where the name of the telemarketer was not transmitted as part of the caller identification information.

69. There is a private right of action under this regulation, pursuant to 47 U.S.C. § 227(c)(5). *See Donbronski v. Selectquote Ins. Servs.*, Case No. 2:23-cv-12597, 2025 U.S. Dist. LEXIS 54413 (E.D. Mich. Mar. 25, 2025); *Newell v. JR Capital*, 2:25-cv-01419-GAM (E.D. Pa. July 16 , 2025).

70. As a result of Defendant's unlawful conduct, and/or the conduct of Defendant's agents on or for Defendant's behalf, Plaintiffs and the members of the Caller ID Class are entitled, under Section 227(c)(5)(B), are each entitled to, *inter alia*, a minimum of $500 in statutory damages for each such violation of the TCPA.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Classes, pray for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiffs as the representatives of the Classes, and appointing their counsel as Class Counsel;

B. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation of Counts I and II ($1,500.00 for each willful violation), whichever is greater all to be paid into a common fund for the benefit of the Plaintiffs and the Class Members;

D. An order declaring that Defendant's actions, as set out above, were unlawful, knowing and willful, and awarding treble damages;

E. An injunction requiring Defendant to cease all unsolicited and unlawful calling activities, and otherwise protecting the interests of the Class;

F. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

G. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: July 21, 2025

**SARA TAYLOR, NICHOLAS FINLEY, AND NICHOLAS DUNGEY**, individually and on behalf of all others similarly situated,

By: s/ Aaron D. Aftergood
One of Plaintiff's Attorneys

**THE AFTERGOOD LAW FIRM**
Aaron D. Aftergood (239853)
aaron@aftergoodesq.com
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 551-5221
Facsimile: (310) 496-2840

Patrick H. Peluso*
ppeluso@pelusolawfirm.com
Peluso Law, LLC
865 Albion Street, Suite 250
Denver, Colorado 80220
Telephone: (720) 805-2008
Facsimile: (720) 336-3663

**Pro Hac Vice* admission to be sought